UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF CORAL SPRINGS POLICE OFFICERS' RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>   vs.<br><br>FARFETCH LIMITED, JOSÉ NEVES, ELLIOT JORDAN, FREDERIC COURT, DANA EVAN, JONATHAN KAMALUDDIN, RICHARD LIU, DAME NATALIE MASSENET, DBE, JONATHAN NEWHOUSE, DANIEL RIMER, MICHAEL RISMAN, DAVID ROSENBLATT, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, ALLEN & COMPANY LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., WELLS FARGO SECURITIES, LLC, COWEN AND COMPANY, LLC, and BNP PARIBAS SECURITIES CORP.,<br><br>         Defendants. | Civil Action No.  1:19-cv-08720<br><br><br>CLASS ACTION<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff City of Coral Springs Police Officers' Retirement Plan ("Plaintiff"), alleges the

following based upon personal knowledge as to itself and its own acts, and upon information and

belief as to all other matters, including the investigation of Plaintiff's counsel, which included,

among other things, a review of Defendants' (defined below) United States Securities and

Exchange Commission ("SEC") filings, wire and press releases published by Farfetch Limited

("Farfetch" or the "Company"), analyst reports and advisories about the Company, media reports

concerning the Company, and information obtainable on the internet.  Plaintiff believes that

substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I.    **NATURE OF THE ACTION AND OVERVIEW**

1.    This is a federal class action on behalf of a class of all persons and entities who purchased or otherwise acquired Farfetch Class A ordinary shares between September 21, 2018, and August 8, 2019, both dates inclusive (the "Class Period"), including those who purchased or otherwise acquired Farfetch Class A ordinary shares pursuant and/or traceable to the registration statement and prospectus (the "Registration Statement") issued in connection with Company's September 21, 2018 initial public offering (the "IPO").  This action asserts violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Farfetch, a Cayman Islands corporation headquartered in London, United Kingdom, represents itself as the leading technology platform for the global luxury fashion industry.  Farfetch Class A ordinary shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "FTCH."

3.    On September 21, 2018, Defendants conducted the IPO pursuant to the Registration Statement, offering over 44 million Class A ordinary shares at $20.00 per share.

4.    Defendants made various statements in the Registration Statement and throughout the Class Period touting the growth potential and competitive advantages of the Company's business model.

5.    However, beginning on August 8, 2019, shareholders learned that the Company's growth potential and market advantages had been overstated.  After the market closed, Farfetch announced its second quarter 2019 financial results, disclosing a loss of $89.6 million. Additionally, after previously predicting that the Company's platform gross merchandise value

("Platform GMV") metric would grow 41% year-over-year, the Company announced that it now expected only 30% to 35% year-over-year Platform GMV growth for third quarter 2019, and only 37% to 40% year-over-year Platform GMV growth for full year 2019.  The Company blamed the disappointing results on competitive pressures from increased promotional pricing and discounting of luxury goods by competitors, despite previous touting of "barriers to entry" and the Company's allegedly "superior" platform.  On this news, the price of Farfetch Class A ordinary shares declined $8.12 per share, or more than 44%, from a close of $18.25 per share on August 8, 2019, to close at $10.13 per share on August 9, 2019.

6.      This action alleges that, in the Registration Statement and throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's operations, and prospects.  Specifically, Defendants failed to disclose that: (1) the Company would refuse to reduce merchandise prices to match the rest of the market; (2) this sub-optimal pricing strategy rendered the Company's platform highly susceptible to underpricing by competitors, despite what Defendants touted as a "superior" platform; and (3) as a result, the Company's past and projected Platform GMV growth rates were foreseeably unsustainable.  As a result of the foregoing, Defendants' statements about the Company's business strategy and growth prospects lacked a reasonable basis at all relevant times.

7.      As a result of Defendants' wrongful acts and omissions, Plaintiff and other members of the Class (defined below) have suffered damages in the form of the precipitous decline in the price of Farfetch Class A ordinary shares.

## II.      <u>JURISDICTION AND VENUE</u>

8.      The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2),  and 77o, and Sections 10(b) and 20(a) of the Exchange

Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

9.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act, and under 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

10.     Venue is proper in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) – (d), because certain of Defendants' wrongful acts also arose in and emanated from, in part, this District, including the dissemination of materially misleading statements into this District, and certain of the Defendants reside, are headquartered, and/or maintain operations, in this District.

11.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

## III.   PARTIES

12.     City of Coral Springs Police Officers' Retirement Plan, as set forth in the accompanying certification, incorporated by reference herein, purchased Farfetch Class A ordinary shares at artificially inflated prices during the Class Period and traceable to the IPO, and has been damaged thereby.

13.     Defendant Farfetch is a Cayman Islands corporation with its principal executive offices located at The Bower, 211 Old Street, London, EC1V 9NR United Kingdom.

14.     Defendant José Neves ("Neves") was, at all relevant times, the Company's Chief Executive Officer and Co-Chair.

15.    Defendant Elliot Jordan ("Jordan") was, at all relevant times, the Company's Chief Financial Officer.

16.    Defendants Neves and Jordan are referred to herein as the "Officer Defendants."

17.    The Officer Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Farfetch's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Officer Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Officer Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.

18.    Defendant Farfetch is liable for the acts of the Officer Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.    The scienter of the Officer Defendants and other employees and agents of the Company is similarly imputed to Farfetch under the doctrine of *respondeat superior* and agency principles.

20.    Defendant Frederic Court ("Court") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

21.     Defendant Dana Evan ("Evan") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

22.     Defendant Jonathan Kamaluddin ("Kamaluddin") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

23.     Defendant Richard Liu ("Liu") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

24.     Defendant Dame Natalie Massenet, DBE, ("Massenet") was, at all relevant times, a Company Director and its Co-Chair, and signed the false and misleading Registration Statement.

25.     Defendant Jonathan Newhouse ("Newhouse") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

26.     Defendant Daniel Rimer ("Rimer") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

27.     Defendant Michael Risman ("Risman") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

28.     Defendant David Rosenblatt ("Rosenblatt") was, at all relevant times, a Company Director, and signed the false and misleading Registration Statement.

29.     Defendants Court, Evan, Kamaluddin, Liu, Massenet, Newhouse, Rimer, Risman, and Rosenblatt are referred to herein as the "Director Defendants."

30.     Defendants Neves, Jordan, Court, Evan, Kamaluddin, Liu, Massenet, Newhouse, Rimer, Risman, and Rosenblatt are referred to herein as the "Individual Defendants."

31.     Defendant Goldman Sachs & Co. LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

32.     Defendant J.P. Morgan Securities LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

33.     Defendant Allen & Company LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

34.     Defendant UBS Securities LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

35.     Defendant Credit Suisse Securities (USA) LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

36.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") is a financial services company that acted as an underwriter of Farfetch's IPO.

37.     Defendant Wells Fargo Securities, LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

38.     Defendant Cowen and Company, LLC is a financial services company that acted as an underwriter of Farfetch's IPO.

39.     Defendant BNP Paribas Securities Corp. is a financial services company that acted as an underwriter of Farfetch's IPO.

40.     Defendants named in paragraphs 31–39 are referred to herein as the "Underwriter Defendants."

41.     The Underwriter Defendants are investment banks that specialize in, *inter alia*¸ the underwriting of public securities offerings.  Collectively, as underwriters of the IPO, the Underwriter Defendants reaped more than $50 million in commissions.

42.     The Registration Statement states that the Company has "agreed to indemnify the several underwriters against certain liabilities, including liabilities under the Securities Act of 1933 . . . ."

43.     The Underwriter Defendants, through their representatives and agents, represented that they had conducted a reasonable due diligence into the operations and business of the Company.

44.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective.

45.     Farfetch, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Background

46.     Farfetch is a London-based online luxury fashion marketplace operator.  The Company's main online platform, *Farfetch Marketplace*, was the source of 90% of Company revenue at the time of the IPO.  As of June 30, 2018, *Farfetch Marketplace* connected over 2.3 million consumers, in 190 countries, to over 980 luxury sellers.

47.     The Company's business model purportedly generates income primarily from handling transactions that take place on its platform.  Transactions are measured in gross merchandise value ("GMV"), which represents the total dollar value of the transactions that take place—and includes product value, shipping, and duties, less returns, value-added taxes, and cancellations.  GMV is then remitted to sellers after Farfetch deducts its income, based on a revenue-sharing model.  Platform GMV is GMV generated on the Company's online platform.  According to the prospectus released with the Registration Statement, Platform GMV represented 98% of the Company's total GMV for the year ended December 31, 2017.

48.     On May 30, 2018, the Company filed a draft registration statement for its IPO with the SEC.  The Company then subsequently filed a series of amended registration statements.  The final Registration Statement was filed on September 19, 2018, on Form F-1/A, and the SEC declared the Registration Statement effective on September 20, 2018.

**B.     Defendants' False and Misleading Statements**

49.     The Company completed its IPO on or about September 21, 2018, raising approximately $884 million from investors by selling more than 44 million Class A ordinary shares at $20.00 per share.  On September 24, 2018, Defendants filed the final prospectus for the IPO, which forms part of the Registration Statement, with the SEC on Form 424B4.  As set forth below, Farfetch offered, sold, and/or solicited sales of Farfetch Class A ordinary shares in the IPO.

50.     The Registration Statement contained misleading statements of material fact, and omitted material facts required by governing regulations and necessary to make statements in the Registration Statement not misleading.

51.     The Registration Statement claimed that Farfetch was "the leading technology platform for the global luxury fashion industry," which Defendants described as a "[l]arge, stable and resilient addressable market."  However, the Registration Statement contained misleading statements about the Company's ability to "drive demand for [Farfetch's] luxury sellers."

52.     Additionally, the Registration Statement contained misleading statements about the protective qualities of the Company's business model, with Defendants assuring investors that the Company's "carefully nurtured" relationships with a large number of luxury sellers acted as a "significant barrier to entry" for potential competitors.

53.     Pursuant to Item 303 of SEC Regulation S-K and the SEC's related interpretive releases thereto, an issuer is required to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on

net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii).  Such disclosures are required to be made by an issuing company in registration statements filed in connection with public stock offerings.

54.     The Registration Statement failed to disclose material information regarding known trends and uncertainties pursuant to Item 303.  As alleged herein, the Registration Statement failed to disclose that the Company's strategy of refusing to respond to market pricing pressures for the goods on its platform was likely to lead to slowing growth and increased competition.

55.     Pursuant to Item 3 of Form F-1, the Registration Statement were required to furnish the information required by Item 503 of Regulation S-K, which requires the registrant to disclose, among other things, a "discussion of the most significant factors that make the offering speculative or risky." 17 C.F.R. § 229.503(c).  Item 503 also required that Defendants "[e]xplain how the risk affects the issuer or the securities being offered."  However, the Registration Statement failed to disclose information regarding material risks pursuant to Item 503.

56.     As a result, the Defendants had a duty to disclose these currently-known, adverse factors, listed in paragraph 6 above.  Defendants failed to disclose risk posed to the Company's market position and Platform GMV growth by its business model and its refusal to price merchandise competitively.  Because the Registration Statement failed to make the requisite disclosures, Defendants violated Item 503.

57.     On the Company's third quarter 2018 earnings call with investors and analysts on November 8, 2018, Defendants continued to overstate the Company's growth prospects and insulation from competition.  Defendant Neves reiterated that the Company's platform had a "self-reinforcing network effect" which the Company believed "will enable [Farfetch] to be the category leader in a winner-takes-most market."  Additionally, Defendant Neves stated that the Company

"remain[s] focused on GMV growth."  As a result, Defendant Neves proclaimed that "[w]hen I think about who is going to take the lion's share of the growth in this industry" and that "Farfetch is uniquely positioned as a global platform for luxury to be the category leader in this space."

58.    Furthermore, Defendant Jordan, discussing the Company's growth in his opening remarks, highlighted what he called "strong momentum in platform GMV," which increased 53% year-over year, and reiterated that the Company "continue[d] to expect strong order growth."

59.    Defendants' misleading narrative about the Company's sustainable growth model continued with the Company's February 28, 2019 press release announcing Farfetch's fourth quarter and full year 2018 financial results.  In the press release, the Company projected both first quarter and full year 2019 Platform GMV to "grow approximately 40%" year-over-year.

60.     On the Company's earnings call with investors and analysts that same day, Defendant Jordan touted fourth quarter and full year 2018 Platform GMV growth rates of 51% and 56%, respectively, with Defendant Neves extolling Farfetch's "unwavering execution of our growth strategy."  Defendant Neves also highlighted that "Farfetch is growing faster than any other company in luxury."  Defendant Neves then indicated that "recent milestone achievements represent an acceleration of that strategy in 2019 to deliver even higher, more sustainable growth in 2020 and beyond."  Finally, Defendant Neves credited the Company's "superior" business model for the growth, stating that "[t]he sustained high growth at scale is a function of the network effects enjoyed by our superior Marketplace model."

61.    On May 15, 2019, the Company issued a press release announcing its financial results for the first quarter 2019.  Therein, the Company stated that "Platform GMV is expected to grow approximately 40% - 42% year-over-year" in for second quarter 2019, and announced that full year 2019 Platform GMV was "expected to grow approximately 41%."

62.     The statements contained in paragraphs 49–61 were materially false and misleading when made because Defendants failed to disclose that: (1) the Company would refuse to reduce merchandise prices to match the rest of the market; (2) this sub-optimal pricing strategy rendered the Company's platform highly susceptible to underpricing by competitors, despite what Defendants touted as a "superior" platform; and (3) as a result, the Company's past and projected Platform GMV growth rates were foreseeably unsustainable.   As a result of the foregoing, Defendants' statements about the Company's business strategy and growth prospects lacked a reasonable basis at all relevant times.

   **C.     The Truth Begins to Emerge**

63.     Investors began to learn the truth of the Company's misleading statements after the market closed on August 8, 2019, when the Company issued a press release disclosing its second quarter 2019 financial results.  The Company reported a loss of $89.6 million after taxes, compared to a loss of $17.7 million the year prior.  Critically, after predicting sustainable and even increasing Platform GMV growth throughout the Class Period, the Company now projected third quarter 2019 Platform GMV growth in a range between 30% and 35% year-over-year, and full year 2019 Platform GMV growth in a range between 37% and 40% year-over-year.   Additionally, the Company announced that Chief Operating Officer Andrew Robb would be stepping down from his position after a six-month transitional period.

64.     On the Company's second quarter 2019 earnings call with investors and analysts later that day, Defendant Neves revealed that the Company "observed an increasingly competitive environment," wherein the Company "saw increasing discounting and promotions from . . . large online retailers."   Accordingly, Defendant Neves admitted that merchandise sold on the Company's Platform "will often be more expensive compared to discounted prices from our

competitors," and that "this may mean a deceleration of our aggressive market share capture in the short term."

65.     Contrasting with Defendants' previous narrative of aggressive and sustainable growth, Defendant Jordan informed call participants that the Company now would focus on "solid but not overly aggressive market share gains," and that the Company would now actively manage Platform GMV growth to a range between 30% and 35% year-over-year for the remainder of 2019, reducing the full year 2019 Platform GMV growth target from 41% year-over-year, to a range between 37% and 40% year-over-year.  Defendant Jordan further revealed that sustaining the Company's prior growth rates would have "come at the cost of very, very heavy promotions," as opposed to being driven by a "superior" platform.

66.     In response to the disappointing results, analysts at Deutsche Bank voiced concern that the Company's "strategically moving outside further outside the core marketplace strategy raises questions," and that "instability in the C-Suite level . . . only increase[s] uncertainty around the growth trajectory and raise[s] questions regarding execution risk."

67.     On this news, the price of Farfetch Class A ordinary shares declined $8.12 per share, or more than 44%, from a close of $18.25 per share on August 8, 2019, to close at $10.13 per share on August 9, 2019.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Farfetch Class A ordinary shares during the Class Period and/or pursuant or traceable to the IPO (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of Farfetch, and their families and affiliates.

69.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to

the parties and the Court.  According to the Company's Form 20-F filed with the SEC on March 1, 2019, the Company had approximately 257 million common shares outstanding, owned by thousands of persons.

70.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.   Whether Farfetch and the Officer Defendants violated the Exchange Act;

      b.   Whether Defendants violated the Securities Act;

      c.   Whether Defendants omitted and/or misrepresented material facts;

      d.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      e.   Whether Farfetch or the Officer Defendants knew or recklessly disregarded that their statements were false and misleading;

      f.   Whether the price of Farfetch Class A ordinary shares was artificially inflated; and

      g.   The extent of damage sustained by the Class members and the appropriate measure of damages.

71.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

72.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**VI.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE**

74.     Plaintiff will rely upon the presumption of reliance establish by the fraud-on-the-market doctrine in that, among other things:

a.    Farfetch and the Officer Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.    The omissions and misrepresentations were material;

c.    The Company's Class A ordinary shares traded in an efficient market;

d.    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's Class A ordinary shares; and

e.    Plaintiff and other members of the Class purchased Farfetch Class A ordinary shares between the time Farfetch and the Officer Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

75.     At all relevant times the market for Farfetch Class A ordinary shares was efficient for the following reasons, among others: (1) as a regulated issuer, Farfetch filed periodic public reports with the SEC; and (2) Farfetch regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   NO SAFE HARBOR

76.   Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are also liable for any false or misleading forward-looking statements pleaded because, at the time each forward-looking statements was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of Farfetch who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

77.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The price of Farfetch Class A ordinary shares significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Farfetch Class A ordinary shares during the Class Period and pursuant and/or traceable to the IPO, Plaintiff and other members of the Class suffered economic loss, *i.e.* damages, under the federal securities laws.

## IX.   SCIENTER ALLEGATIONS

78.   During the Class Period, Farfetch and the Officer Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the

statements they made or acted in reckless disregard of the true information known to them at the time.  In so doing, Farfetch and the Officer Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Farfetch Class A ordinary shares during the Class Period.

## X.  CLAIMS AGAINST DEFENDANTS

### A.  EXCHANGE ACT CLAIMS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder
against Farfetch and the Officer Defendants**

79.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.  During the Class Period, Farfetch and the Officer Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other members of the Class, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Farfetch Class A ordinary shares at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, these Defendants, and each of them, took the actions set forth herein.

81.  Farfetch and the Officer Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's Class A ordinary shares in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### against the Officer Defendants

82.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.    The Officer Defendants acted as controlling persons of Farfetch within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Officer Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Officer Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.    In particular, each of the Officer Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85.    As set forth above, Farfetch and the Officer Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other

members of the Class suffered damages in connection with their purchases of Farfetch Class A ordinary shares during the Class Period.

### B.    SECURITIES ACT CLAIMS

86.    Plaintiff brings the claims in Counts III, IV, and V under Sections 11, 12(a)(2), and 15 of the Securities Act, respectively, individually and on behalf of all persons and entities who purchased shares of Farfetch Class A ordinary shares pursuant or traceable to the materially false and misleading Registration Statement, and were damaged thereby.

87.    Plaintiff's non-fraud claims brought under the Securities Act are based on the fact that the Registration Statement contained untrue statements of material fact and omitted other facts necessary to make statements therein not materially false or misleading.   Specifically, the Registration Statement contained untrue statements of material fact and omitted material facts about the Company's business and operations, including misrepresentations and omissions regarding the fact that: (1) the Company would refuse to reduce merchandise prices to match the rest of the market; (2) this sub-optimal pricing strategy rendered the Company's platform highly susceptible to competition; and (3) as a result, the Company's past and projected Platform GMV growth rates were foreseeably unsustainable.   As a result of the foregoing, Defendants' statements about the Company's business strategy and growth prospects lacked a reasonable basis at all relevant times.

## COUNT III

**Violation of Section 11 of the Securities Act
against All Defendants**

88.     Plaintiffs incorporate paragraphs 1–56, 62–73, and 86–87 by reference.

89.     This claim is premised on the remedies available under Section 11 of the Securities

Act, 15 U.S.C. § 77k, and expressly excludes and disclaims any allegation that Defendants acted

with fraudulent intent or recklessness.

90.     The Registration Statement contained untrue statements of material fact, omitted to

state other facts necessary to make the statements made therein not misleading and/or omitted facts

required to be stated therein.

91.     Each of Defendants named herein is responsible for and are liable for the contents

and dissemination of the Registration Statement.

92.     The Individual Defendants each signed the Registration Statement and caused it to

be declared effective by the SEC on September 20, 2018.

93.     Farfetch is the registrant for the IPO and as issuer of the shares is strictly liable to

Plaintiff and the Class for the misstatements and omissions.

94.     The Underwriter Defendants underwrote the IPO and their failure to conduct an

adequate due diligence investigation was a substantial factor leading to the harm complained of

herein.

95.     Defendants caused the Registration Statement to be filed with the SEC and to be

declared effective, resulting in the issuance and sale of over 44 million shares, which shares were

purchased by Plaintiff and the Class.

96.     None of the Defendants made a reasonable investigation or possessed reasonable

grounds for the belief that the statements contained in the Registration Statement were true and

did not omit any material facts required to be stated therein or facts that were necessary to make the statements made therein not false or misleading.

97.     By reason of the conduct herein alleged, each Defendant violated Section 11 of the Securities Act.

## COUNT IV

### Violation of Section 12(a)(2) of the Securities Act
### against the Underwriter Defendants

98.     Plaintiffs incorporate paragraphs 1–56, 62–73, and 86–87 by reference.

99.     This claim is premised on the remedies available under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), and expressly excludes and disclaims any allegation that Defendants acted with fraudulent intent or recklessness.

100.    The Underwriter Defendants were sellers of Farfetch shares that were registered in the IPO pursuant to the Registration Statement.  By means of the Registration Statement, the Underwriter Defendants sold, offered, and/or solicited sales of Farfetch stock sold in the offerings. The Underwriter Defendants were motivated by their own financial interests at all relevant times.

101.    None of the Underwriter Defendants named herein conducted a reasonable investigation or possessed a reasonable basis for the belief that the statements contained in the Registration Statement, and identified above were true, were without omissions of material fact, and were not misleading.

102.    The Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading and/or omitted facts required to be stated therein.

103.    By reason of the conduct herein alleged, each Underwriter Defendant violated Section 12(a)(2) of the Securities Act.

## COUNT V

### Violation of Section 15 of the Securities Act
### against the Individual Defendants

104.    Plaintiffs incorporate paragraphs 1–56, 62–73, and 86–87 by reference.

105.    This claim is premised on the remedies available under Section 15 of the Securities

Act, 15 U.S.C. § 77o, and expressly excludes and disclaims any allegation that Defendants acted

with fraudulent intent or recklessness.

106.    Each of the Individual Defendants was a control person of Farfetch by virtue of

their position as a director or senior officer with the Company.

107.    The Individual Defendants oversaw all operations and financial controls at Farfetch

at the time of the IPO, and Farfetch could not have completed the IPO without these Defendants

signing or authorizing their signatures on the Registration Statement.

108.    By reason of the conduct herein alleged, each Individual Defendant violated

Section 15 of the Securities Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

    a.    Determining that this action is a proper class action under Rule 23 of the
Federal Rules of Civil Procedure;

    b.    Awarding compensatory damages and equitable relief in favor of Plaintiff
and other members of the Class against all Defendants, jointly and severally,
for all damages sustained as a result of Defendants' wrongdoing, in an
amount to be proven at trial, including interest thereon;

    c.    Awarding Plaintiff and the Class their reasonable costs and expenses
incurred in this action, including counsel fees and expert fees; and

    d.    Such other and further relief as the Court may deem just and proper.

XI.     **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 19, 2019                             Respectfully Submitted,

**KESSLER TOPAZ**
**  MELTZER & CHECK, LLP**

*s/ Naumon A. Amjed*
Naumon A. Amjed
Darren J. Check
Jonathan R. Davidson
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
jrdavidson@ktmc.com
rdegnan@ktmc.com

*Attorneys for Plaintiff*

# CERTIFICATION

City of Coral Springs Police Officers' Retirement Plan ("Coral Springs" or "Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.      Coral Springs did not purchase the securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

2.      Coral Springs is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

3.      Coral Springs's Class Period purchase and sale transactions in Farfetch Limited securities that are the subject of this action are attached in Schedule A.

4.      Coral Springs has full power and authority to bring suit to recover for its investment losses.

5.      Coral Springs has fully reviewed the facts and allegations of the Complaint and authorizes its filing.

6.      I, Scott Myers, Chairman of the Board of Trustees of the City of Coral Springs Police Officers' Retirement Plan, am authorized to make legal decisions on behalf of Coral Springs.

7.      Coral Springs intends to actively monitor and vigorously pursue this action for the benefit of the class.

8.      Coral Springs will endeavor to provide fair and adequate representation and work directly with the efforts of class counsel to ensure that the largest recovery for the class consistent with good faith and meritorious judgment is obtained.

9.      Coral Springs is not currently serving and has not served as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this Certification.

10.     Coral Springs has not sought to serve as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this Certification.

11.     Coral Springs will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this date: ___9/19/2019_____

**Coral Springs Police Officers' Retirement Plan**

By: _Scott Myers_____

Scott Myers
Chairman of the Board of Trustees

## SCHEDULE A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Common Stock | Buy | 10/8/2018 | 2,170 | $23.25 |
| Common Stock | Buy | 10/16/2018 | 130 | $24.25 |
| Common Stock | Buy | 10/31/2018 | 130 | $20.80 |
| Common Stock | Buy | 10/31/2018 | 270 | $20.99 |
| Common Stock | Buy | 11/2/2018 | 70 | $22.47 |
| Common Stock | Buy | 11/2/2018 | 250 | $22.08 |
| Common Stock | Buy | 11/7/2018 | 460 | $21.89 |
| Common Stock | Buy | 11/9/2018 | 450 | $23.01 |
| Common Stock | Buy | 3/20/2019 | 351 | $26.00 |
| Common Stock | Buy | 3/21/2019 | 14 | $26.05 |
| Common Stock | Buy | 3/22/2019 | 20 | $25.90 |
| Common Stock | Buy | 3/22/2019 | 465 | $26.00 |
| Common Stock | Buy | 3/25/2019 | 40 | $25.98 |
| Common Stock | Buy | 4/4/2019 | 60 | $25.89 |
| Common Stock | Buy | 4/4/2019 | 190 | $25.85 |
| Common Stock | Buy | 4/8/2019 | 20 | $25.79 |
| Common Stock | Buy | 5/2/2019 | 900 | $25.21 |
| Common Stock | Buy | 6/18/2019 | 440 | $23.30 |
| Common Stock | Sell | 1/11/2019 | 550 | $18.57 |
| Common Stock | Sell | 1/18/2019 | 60 | $20.19 |
| Common Stock | Sell | 1/18/2019 | 1,100 | $20.16 |
| Common Stock | Sell | 4/23/2019 | 100 | $24.46 |
| Common Stock | Sell | 7/16/2019 | 180 | $20.73 |
| Common Stock | Sell | 7/31/2019 | 510 | $20.12 |
| Common Stock | Sell | 8/2/2019 | 590 | $19.44 |
| Common Stock | Sell | 8/5/2019 | 780 | $18.44 |
| Common Stock | Sell | 8/6/2019 | 530 | $17.58 |
| Common Stock | Sell | 8/7/2019 | 560 | $17.14 |